STATE, EX REL. STEPHEN A. GARDNER, v. THE MAYOR AND COMMON COUNCIL OF THE CITY OF NEWARK.

1. The acts of 1878, re-apportioning the legislative districts within any county or counties, are not in conflict with article IV., section 3, of the state constitution.
2. These acts are public acts, and do not go into operation until July 4th.
3. Until these acts become operative, the city of Newark does not answer the description of a city containing more than two assembly districts

Gardner v. Newark.

which are completely within its limits, and there is no duty imposed upon its common council to divide said city into wards, by virtue of the act of April 5th, 1878. *Pamph. L., p.* 311.

This is an application for a peremptory writ of *mandamus*, to be directed to the mayor and common council of the city of Newark, commanding them to divide the said city into wards corresponding in number and boundaries to the assembly districts exclusively embraced within the limits of said city. The duty of making such division is alleged to arise from "An act concerning cities containing more than two assembly districts, where all the assembly districts within any such city are completely and exclusively within the limits of such city, and providing for conformity between the lines of wards and assembly districts in any such city," approved April 5th, 1878. *Pamph. L., p.* 311.

The first and second sections of this act are as follows:

"1. Be it enacted by the Senate and General Assembly of the State of New Jersey, That in any city of this state which now or hereafter shall contain more than two assembly districts within any such city, which assembly districts are completely and exclusively within the limits of such city, and embrace no territory outside of such city, it shall be the duty of the mayor and common council, or other municipal board corresponding thereto, and such mayor and common council or municipal board of every such city are hereby directed by resolution to divide such city into wards corresponding in number and boundaries to such assembly districts exclusively embraced as aforesaid within the limits of such city.

"2. And be it enacted, That such division of such city into wards, as provided for in the first section of this act, shall be made on or before the first day of May in each year, whenever any change in the assembly districts in such city shall make it necessary to take the action directed in the first section of this act, so as to establish an exact conformity between the ward lines and the assembly district lines within such city."

It is admitted in the state of the case that at the time of the passage, and now, the city of Newark was and is so divided into assembly districts, that five entire assembly districts, and parts of two other districts, were embraced within the said city, unless this arrangement of districts was changed by the two acts passed respectively April 3d and April 5th, 1878, being supplements to an act to re-apportion the several assembly districts of the State of New Jersey. Under either of these acts the whole territory of Newark will be embraced in seven districts, all of which will be exclusively within the limits of the said city, and embrace no territory outside thereof.

Argued at June Term, 1878, before Justices VAN SYCKEL, DIXON and REED.

For the motion, *Jacob Vanatta* and *J. D. Bedle.*

*Contra, Henry Young* and *F. T. Frelinghuysen.*

The opinion of the court was delivered by

REED, J. The first question which presents itself is whether the state of facts exists upon which the statute throws upon the mayor and common council of the city of Newark the duty of dividing the wards of that city in conformity with the legislative districts. It is admitted that unless the acts supplementary to the apportionment act of 1871 are now operative, the city of Newark is not within the description of a city containing assembly districts completely and exclusively within its limits. It is further admitted that whenever either of these acts are operative, its provisions bring the said city within such description.

The argument of the counsel for the respondents is therefore first directed to the question of the absence of any present operative force in either of the re-apportioning statutes. They place themselves upon two grounds:

*First.* That the statutes are unconstitutional.

*Second.* That if constitutional, they are public acts, containing no provision relative to the time when they shall take effect, and therefore do not go into operation until the 4th of July next.

The unconstitutionality of the acts is alleged to exist in the fact of their conflict with article IV., section 3, of the state constitution. That section is as follows:

"The members of the general assembly shall be composed of members annually elected by the legal voters of the counties, respectively, who shall be apportioned among the counties as nearly as may be, according to the number of their inhabitants. The present apportionment shall continue until the next census of the United States shall have been taken, and an apportionment of the members of the general assembly shall be made by the legislature at its first session after the next and every subsequent enumeration or census; and when made, shall remain unaltered until another enumeration shall have been taken; provided, that each county shall at all times be entitled to one member, and the whole number of members shall never exceed sixty."

At the time of the adoption of the constitution of 1844, the present system of legislative districts was unknown.

Each county elected its member or quota of members from the county at large.

It is to the apportionment of the number of representatives to which each county was entitled, that the above section obviously refers.

The breaking up of the counties into smaller districts, for the purpose of securing closer local representation, was a subsequent measure.

At the time of the incorporation of this section in the constitution, these districts were not in the mind of the convention. The only restrictive force of the section is relative to the apportionment among the counties. That this apportionment must remain from the time of the taking of one federal census to the time of taking another, is clear.

But the power of the legislature to direct the method in

which the members so apportioned shall be elected within the county is unfettered.

That purpose is all that the present re-apportionment acts attempt to accomplish, and the acts are not inimical to this constitutional provision.

The second position of the respondents, that these acts are public acts, is, I think, well taken. It is true that the line dividing public and private statutes is often obscure.

In this country the disposition has been, on the whole, to enlarge the limits of the class of public acts, and to bring within it all enactments of a general character, or which in any way affect the public at large. *Sedg. on Stat. and Con., p.* 25. An act to tax banks was so held in *Den, State,* v. *Helmes, Penn.* 1050. So an act to establish the boundaries of towns. *Commonwealth* v. *Springfield,* 7 *Mass.* 9. So acts which, although affecting a particular locality, apply to all persons within it, are public acts. *Pierce* v. *Kimball,* 9 *Greenl.* 54.

It would be difficult to instance a class of statutes more directly affecting the public than the ones under consideration. They affect all the people of the county of Essex.

They affect the people of the state in that these acts regulate the method of electing the representatives in one branch of the council of the state.

I think that they are public acts, and by force of section thirteen of the act relative to statutes they do not become operative until the 4th of July next.

The counsel for the relator then urged, that even if it be true that the legislative districts will not be completely and exclusively within the limits of the city of Newark until July 4th next, yet the court can now command the division.

This is urged upon a peculiar and ingenious construction of the second section of the said act, providing for the division of the wards in certain cities. This construction of the act consists in reading it as follows:

" That whenever in any year a change in the assembly districts is made, then before the first of May such division of

such city shall be made to take effect when such change becomes operative."

I do not think that the section, upon the most liberal construction, will warrant any such reading. The change must precede the division as an accomplished fact, not as a possibility. I know of no instance where the operation of statutes has been anticipated without legislative direction. If the legislature had so intended in this case, that intent would have appeared.

As they stand, these re-apportioning acts have no more force at present than if they had not been passed.

There is now no change of assembly districts. The conditions upon which the duty of the mayor and common council depends are not apparent.

This result renders it unnecessary to consider the question involving the constitutionality of the present act as a special act regulating the internal affairs of a city.

It is too important to be decided upon the brief consideration which the cause permits at present.

Upon the other grounds stated the writ is refused, with costs.